STATE ex rel. STATE BOARD OF EQUALIZATION, Relator, *v.* FORTUNE, Respondent.

[No. 1,488.]

[Submitted April 5, 1900. Decided May 7, 1900.]

*Taxation—State Board of Equalization—Powers—Constitution—Adoption of Provision from Constitution of Another State—Interpretation.*

1.   Under Constitution, Art. XII., Section 15, the state board of equalization is without power to increase or decrease the total valuation of the property in the state as shown by the abstracts transmitted to it by the county boards. (*State ex rel. Wallace* v. *State Board of Equalization,* 18 Mont. 473. *Affirmed.*)

2.   Under Constitution, Art. XII., Section 15, the state board of equalization is without power to increase or decrease the valuation of any specific class or classes of property above or below that fixed by the county boards as shown by the abstracts transmitted to the state board,—its authority being limited to raising or lowering the entire assessment of a county.

3.　Where, in construing a provision of the state constitution, it appears it was adopted from the constitution of another state, and that previous to such adoption the court of last resort of the parent state had placed on the provision an interpretation not clearly erroneous, the presumption is that the convention adopting the provision was conversant with, and designed to adopt, the interpretation given.

ACTION by the State of Montana, on the relation of the State Board of Equalization, against Vincent Fortune, County Clerk and Recorder of Cascade County.　Demurrer sustained.

*Mr. C. B. Nolan, Attorney General,* for Relator.

*Mr. A. C. Gormley* and *Messrs. Carpenter & Carpenter,* for Respondent.

PER CURIAM.——This is an original proceeding in *mandamus* by the state board of equalization as relator.　The affidavit upon which the alternative writ was issued discloses these facts:　The relator, at its annual meeting in July and August, 1899, inspected the duplicate statements of the assessments of the several counties of Montana transmitted by the county clerks in accordance with the provisions of Section 3842 of the Political Code; and, after an examination had been made by the members of the board for the purpose of ascertaining the true value of certain classes of personal property, increased the assessed valuation of such property by $745,629. The increased valuation of beef cattle was $36,191, of stock cattle $196,833, and of stock sheep $467,087.　The values fixed by the relator were $40 for beef cattle, $22.50 for stock cattle, and $2.75 for stock sheep per head.　In Cascade county beef cattle had been assessed at $30, stock cattle at $20, and stock sheep at $2.50 per head.　The increase in this county made by the relator was $25,290 for beef cattle, $69,992.50 for stock cattle, and $41,871 for stock sheep.　The increase was made without notice to the county clerk or any taxpayer. The county clerk of Cascade county refused to enter in the assessment book of that county the changes made by the relator, and the object of this proceeding is to compel him to do so.　The defendant tests by demurrer the sufficiency of the facts stated.

The learned attorney general frankly states that the present proceeding practically amounts to a motion for a rehearing of the case of *State ex rel. Wallace* v. *State Board of Equalization*, which was decided on September 28, 1896, and is reported in 18 Mont. at page 473, 46 Pac. 266. The question submitted in that case was whether the state board of equalization possesses the power to increase the total of the assessed valuations of the counties of the state. That question is now again presented, together with the question of whether such board has the power to increase or decrease the valuation of any specific class or classes of property above or below that fixed by the county boards as shown by the abstracts and statements transmitted to the state board. In the *Wallace Case* this Court held that the state board of equalization has not authority to increase or decrease the total valuation of the property in the state as shown by the abstracts transmitted to it by the county boards. The attorney general earnestly and with ability argues that the former decision is erroneous. He insists that in the *Wallace Case* the constitutional provisions only were considered, the statutory provisions touching the board of equalization not having been called to the Court's attention. It is apparent, however, that the decision was based upon the limitations ordained by Sections 9 and 15 of Article XII of the Constitution of Montana in respect of powers of the state board of equalization. Commenting upon Section 15, and comparing it with Section 15 of Article X of the Colorado constitution, the Court said: ''We have been unable to find a constitutional provision exactly like ours in any of the states. The constitution of the state of Colorado contains provisions upon this subject so nearly like ours that it may be fairly claimed that they are *substantially* the same. In fact, it seems from their substantial similarity that our state may be said to have adopted the Colorado constitution upon this subject.'' The opinion sets out also Section 11 of Article X of the Colorado constitution, which, as to the subject then and now under consideration differs not at all from Section 9 of Article XII of our Constitution. The Court

quoted liberally from the opinion of the Supreme Court of Colorado in *People ex rel. Crawford* v. *Lothrop*, 3 Colo. 428, which interpreted said sections of the constitution of that state, and adopted the reasoning and the decision therein announced, saying:   "These comments by the Colorado court upon the constitutional restrictions placed upon the powers of the state board of equalization of that state apply with exactness and force to our Constitution and the powers of the re-spondent board thereunder.   We think the authority quoted above is absolutely decisive of the case at bar.   We therefore are of the opinion that the respondent board, in increasing the total valuation of the property of the state as disclosed and fixed by the abstracts and statements transmitted to it by the assessors and county boards of equalization, acted without authority, and that its action in this respect was and is wholly void.''

The Colorado decision was made in 1877, and Montana be-came a state in 1889; Section 15 of Article XII of our Con-stitution was adopted from the Colorado constitution after an interpretation thereof by the court of last resort in the parent state.   That interpretation is not clearly erroneous.   The presumption is, therefore, that the convention which framed the Montana Constitution was "conversant with and designed to adopt also'' the interpretation previously given to the sec-tion in Colorado.   (Am. & Eng. Ency. Law (2d Ed.), 935; *Stadler* v. *First National Bank*, 22 Mont. 203, 56 Pac. 111.) Nor has the supreme court of that state, in *Ames* v. *People* (Colo. Sup.), 56 Pac. 656, modified or receded from *People* v. *Lothrop*, and as late as January 17th of the present year the last-named case is reaffirmed in *People* v. *Ames* (Colo. Sup.), 60 Pac. 346.

The learned attorney general cites Sections 3690, 3800–3802 of the Political Code as conferring upon the state board of equalization authority to do that which it attempted to ac-complish; but statutes cannot clothe the state board with power denied to it by the fundamental law.

After a careful examination and consideration of the reasons

advanced and the authorities cited, we are of the opinion that the conclusion announced in the *Wallace Case* should not now be disturbed or overruled. Since it was decided, two general elections and two sessions of the legislative assembly have been held, thereby affording opportunity for the people, if dissatisfied with the interpretation, to change the Constitution so as to cure the evils of which complaint is made; but no such amendment has been proposed. This remedy is yet available to them.

In the *Wallace Case* the court was inclined (as we are) to think that by the weight of authority the state board of equalization is without power to change the valuation of any class of property, its authority being limited to raising or lowering the entire assessment of a county. In the proceeding at bar it appears that the state board increased the valuation of three classes of personal property. Determination of the questions thus suggested, and of the further question whether the state board can raise or lower assessments without first giving notice of its contemplated action, is unnecessary to a decision, and an opinion thereon is reserved.

The demurrer is sustained, and a judgment will be entered dismissing the proceeding.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY: I concur in the foregoing opinion solely on the ground of *stare decisis*. If the question involved were a new one in this state, I should be in favor of disregarding the construction given to the section of the constitution by the Supreme Court of Colorado in *People* v. *Lothrop*, 3 Colo. 428, and followed by this Court in *State ex rel. Wallace* v. *State Board of Equalization*, 18 Mont. 473, 46 Pac. 266, as demonstrably wrong.